BARRETT S. LITT (No. 45527)
E-mail: blitt@kmbllaw.com
MARILYN E. BEDNARSKI (No. 105322)
E-mail: mebednarski@kmbllaw.com
DAVID S. McLANE (No.124952)
E-mail: dmclane@kmbllaw.com
CAITLIN S. WEISBERG (No. 262779)
E-mail: cweisberg@kmbllaw.com
KAYE, McLANE & BEDNARSKI
975 East Green Street
Pasadena CA 91106
Telephone: (626) 844-7660
Facsimile: (626) 844-7670

Wendy J. Koen (No. 255759)
E-mail:  wkoen.defender@gmail.com
Law Office of Wendy J. Koen
32818 Mira Street
Menifee, California 92584
Telephone: (858) 500-2300

Attorneys for Plaintiff WILLIAM J. RICHARDS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| WILLIAM J. RICHARDS, <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF SAN BERNARDINO, MARK NOURSE, NORMAN PARENT, TOM BRADFORD, JOHN NAVARRO, DANIEL GREGONIS, NORMAN SPERBER, and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO. 17-cv-00497-SJO-SP <br><br> [Honorable S. James Otero] <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT DR. SPERBER'S MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> Date:    August 20, 2018 <br> Time:    10:00 a.m. <br> Ctrm:   10C |

1  TO THE COURT, DEFENDANTS, AND THEIR ATTORNEYS OF RECORD:

2       Plaintiff William J. Richards, by and through counsel of record, respectfully

3  submits this Opposition to Defendant Dr. Sperber's Motion for Judgment on the

4  Pleadings (Dkt. No. 47).

5       Plaintiff's Opposition is based on the attached Memorandum of Points and

6  Authorities, the Declaration of Caitlin S. Weisberg submitted herewith, all pleadings

7  and papers on file in this action, and such other evidence and argument as may be

8  presented on behalf of Plaintiffs at the hearing on Defendant's motion.

9                               Respectfully submitted,

10                              KAYE, McLANE, BEDNARSKI & LITT, LLP

11

12  DATED: July 27, 2018       By:  / s / Caitlin S. Weisberg
                                     CAITLIN S. WEISBERG
13                                   Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................... 1

II.       FACTUAL AND PROCEDURAL BACKGROUND ..................................... 1

     A.     Plaintiff's Wrongful Conviction……………………………………1

     B.     Current Procedural Posture…………………………………………4

III.     LEGAL STANDARD .................................................................... 5

IV.     ARGUMENT .................................................................................. 6

     A.     Defendant Sperber's Reliance on Facts Not Alleged in the
            Complaint and Unfavorable Inferences Cannot Result in
            Dismissal at the Motion for Judgment on Pleadings Stage……………6

     B.     Defendant Sperber Acted Under Color of Law, as Alleged in the
            Complaint, and Defendant Has Cited No Law to the Contrary………10

     C.     Defendant Sperber Is Not Entitled to Absolute Testimonial Immunity
            for his Pretrial Fabrication of Forensic Evidence……………………14

     D.     On the Facts Alleged in the Complaint, Defendant Sperber Is Not
            Entitled to Qualified Immunity……………………………………17

V.      CONCLUSION ............................................................................. 20

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Arden v. Kastell*,
    553 F. App'x 697 (9th Cir. 2014).............................................................21

5

6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................6

7

8

*Brewer v. Hayne*,
    860 F.3d 819 (5th Cir. 2017) ............................................................12, 19

9

*Brown v. Miller*,
    519 F.3d 231 (5th Cir. 2008) ....................................................................20

10

11

*Costanich v. Dep't of Soc. & Health Servs.*,
    627 F.3d 1101 (9th Cir. 2010) ..................................................................21

12

*Cunningham v. Gates*,
    229 F.3d 1271 (9th Cir. 2000) ..................................................................16

13

14

*Devereaux v. Abbey*,
    263 F.3d 1070 (9th Cir. 2001) ..................................................................20

15

*Dworkin v. Hustler Magazine Inc.*,
    867 F.2d 1188 (9th Cir. 1989)....................................................................5

16

17

*Filarsky v. Delia*,
    566 U.S. 377 (2012).................................................................11, 12, 13

18

*Franklin v. Terr*,
    201 F.3d 1098 (9th Cir. 2000) ..................................................................15

19

20

*Galbraith v. Cty. of Santa Clara*,
    307 F.3d 1119 (9th Cir. 2002) ..................................................................21

21

*Gantt v. City of Los Angeles*,
    717 F.3d 702 (9th Cir. 2013) ....................................................................21

22

23

*Gibson v. United States*,
    781 F.2d 1334 (9th Cir. 1986)....................................................................5

24

*Gonzalez v. Spencer*,
    336 F.3d 832 (9th Cir. 2003) ....................................................................13

25

26

*Gregory v. City of Louisville*,
    444 F.3d 725 (6th Cir. 2006) ........................................................16, 17, 18

27

*Halsey v. Pfeiffer*,
    750 F.3d 273 (3d Cir. 2014) ......................................................................20

28

*Hoeft v. Tucson Unified Sch. Dist.*,
967 F.2d 1298 (9th Cir. 1992) ................................................. 10, 21

*Keko v. Hingle*,
318 F.3d 639 (5th Cir. 2003) ............................................. 16, 17, 18

*Lacy v. Cty. of Maricopa*,
631 F. Supp. 2d 1197 (D. Ariz. 2008) .................................... 21

*Limone v. Condon*,
372 F.3d 39 (1st Cir. 2004) ...................................................... 20

*Lisker v. City of Los Angeles*,
780 F.3d 1237 (9th Cir. 2015) .......................................... 15, 16

*Lugar v. Edmondson Oil Co.*,
457 U.S. 922 (1982) .......................................................... 11, 12

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) ............................................ 6, 19

*Mier v. Owens*,
57 F.3d 747 (9th Cir. 1995) ..................................................... 5

*Mitchell v. Forsyth*,
472 U.S. 511 (1985) ............................................................... 19

*Moldowan v. City of Warren*,
578 F.3d 351 (6th Cir. 2009) ..................................13, 17, 18, 19

*Paine v. City of Lompoc*,
265 F.3d 975 (9th Cir. 2001) .......................................... 15, 16

*Polich v. Burlington N., Inc.*,
942 F.2d 1457 (9th Cir. 1991) ................................................. 6

*Price v. State of Hawaii*,
939 F.2d 702 (9th Cir. 1991) .......................................... 11, 12

*Rehberg v. Paulk*,
566 U.S. 356 (2012) ............................................................... 15

*Rodriques v. Furtado*,
950 F.2d 805 (1st Cir. 1991) .................................................. 13

*Simmons v. Sacramento Cty. Superior Court*,
318 F.3d 1156 (9th Cir. 2003) ............................................. 11

*Starks v. City of Waukegan*,
946 F. Supp. 2d 780 (N.D. Ill. 2013) ................................... 13

*Tennison v. City & Cty. of San Francisco*,
570 F.3d 1078 (9th Cir. 2009) .............................................. 21

*Usher v. City of Los Angeles,*
   828 F.2d 556 (9th Cir.1987) ............................................................. 5, 14

*Whitlock v. Brueggemann,*
   682 F.3d 567 (7th Cir.2012) ................................................................. 20

**Statutes**

42 U.S.C. § 1983 ............................................................. 1, 11, 13, 21

**Rules**

Federal Rule of Civil Procedure 12(b) and Rule 12(c) ................................ 5
Fed. R. Civ. P. 8(a) ................................................................ 6, 7
Fed. R. Civ. P. 12(d) ................................................................ 8
Fed. R. Civ. P. 56(c) ................................................................ 8
Fed. R. Civ. P. 56(d) ................................................................ 8
Rule 12(b) ............................................................................ 5
Rule 12(c) ............................................................................ 5

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In this civil rights action, Plaintiff William Richards ("Plaintiff"), who was wrongfully convicted for the 1993 murder of his wife, alleges that the defendant police investigators and forensic analysts violated his rights by fabricating evidence, suppressing and destroying exculpatory and potentially exculpatory evidence, and by conducting a reckless investigation. One of the defendants, Dr. Norman Sperber, brings the instant motion for judgment on the pleadings, arguing that he was an expert witness, not a county-employed forensic analyst, and therefore cannot be held liable. Defendant's motion asserts three different legal theories for this argument: (1) that he was not acting under color of state law for purposes of 42 U.S.C. § 1983; (2) that he was a testifying expert and therefore is entitled to absolute witness immunity for all of his conduct, including out-of-court forensic examination and analysis; and (3) that he is entitled to qualified immunity. None are persuasive, and all rely on disputing the allegations in Plaintiff's complaint, which must be accepted as true for purposes of the motion.

Mr. Richards, an innocent man who was wrongfully deprived of his liberty for more than twenty-two years, has more than adequately alleged fabrication of evidence claims against Dr. Sperber and should be afforded a full opportunity to vindicate his rights through discovery and trial.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Plaintiff's Wrongful Conviction.[1]

On August 10, 1993, Pamela Richards, Plaintiff's wife, was murdered at their home. First Amended Complaint (Dkt. No. 15) (hereinafter "FAC") ¶ 2. Plaintiff

---

[1] This summary of the facts focuses on Plaintiff's false evidence allegations, including those against Defendant Sperber; it does not cover all of the due process allegations set forth in the complaint.

discovered her body shortly before midnight, when he returned home from working the 3:00 p.m. to 11:00 p.m. at his job. *Id.* ¶¶ 2, 18-19. The murder was investigated by the San Bernardino County Sheriff's Department ("SBSD") and its agents and employees, named as defendants in this action. *Id.* ¶¶ 2-3, 8-10, 23, 25-26, 36, 42.

From the beginning, Plaintiff was an unlikely suspect. Ms. Richards was brutally beaten and strangled; evidence was found in multiple locations, and Ms. Richards had defensive wounds on her body, suggesting a prolonged attack. FAC ¶ 20. It was virtually impossible for Plaintiff to have committed the brutal murder in the 5-11 minutes that he was home prior to calling 911. *Id.* ¶ 18-19, 23-24. Plaintiff had minimal blood on his clothing and no wounds or other signs of a struggle. *Id.* ¶ 20, 34, 38. Moreover, circumstantial evidence strongly suggested that the attack began earlier in the evening, between 7:04 p.m. and 9:30 p.m., when Plaintiff was unquestionably at work. *Id.* ¶¶ 18, 21-22, 23-24. Nevertheless, the police focused their investigation immediately on Plaintiff. FAC ¶¶ 2, 26, 31.

During the investigation, the police and forensic investigator defendants repeatedly disregarded exculpatory and potentially exculpatory evidence and caused such evidence to be destroyed. FAC ¶ 25-26, 28, 30, 32, 33, 41. In particular, these defendants specifically deferred all crime scene processing, including critically important time of death investigation, until after 6:00 a.m., when it was too late. *Id.* ¶ 25, 30. Even after beginning the investigation, the defendant police and forensic investigators failed to finger print the crime scene, including places and objects that the attacker likely would have touched, and drew conclusions that were unsupported by the evidence regarding footprints and tire tracks allegedly demonstrating the absence of third parties. *Id.* ¶ 33.

In an attempt to inculpate Plaintiff, Defendant Nourse, a SBSD Deputy and the first officer on the scene, wrote false police reports purporting to establish that Mrs. Richards "did not appear to have been dead for very long" when he arrived. FAC ¶ 27. Although Defendant Nourse used medical terms such as "lividity" and

"rigor mortis" in his report, he was not qualified to determine time of death or reach medical conclusions regarding the condition of the body. *Id.* In addition, even if he were qualified, Defendant Nourse did not conduct a sufficient examination of Mrs. Richards's body to reach the conclusions in his report. *Id.*

More false evidence was put forward by Defendant Gregonis, a SBSD criminalist who participated in the crime scene investigation. Defendant Gregonis falsely claimed that he discovered blue fibers in one of Mrs. Richards's broken fingernails, which were indistinguishable from fibers in the shirt that Plaintiff was wearing on August 10, 1993. FAC ¶¶ 36-37. The fibers were not present in the fingernail at the time of the autopsy, and Defendant Gregonis had access to Plaintiff's shirt, which was already in evidence. *Id.* Defendant Gregonis also falsified blood spatter analysis, claiming that the blood on Plaintiff's clothing was consistent with him having committed the murder and inconsistent with him having cradled his wife after discovering her. *Id.* ¶ 38.

A lesion resembling a bitemark was documented in photograph of Mrs. Richards's hand. FAC ¶ 42. Although the lesion was not swabbed for DNA evidence, *Id.* ¶ 33, the photograph of the lesion was submitted to Defendant Sperber, a forensic odontologist, for examination. *Id.* ¶ 42. Defendant Sperber was "retained by" the County of San Bernardino and was "an agent of the" County "acting under the color of law within the course and scope of his agency and employment relationship with the" County at all relevant times. *Id.* ¶ 10.

Defendant Sperber concluded that the lesion "was a human bite mark, claimed it reflected a distinctive abnormality that was consistent with Plaintiff's dental anatomy, and asserted that the abnormality was shared by 'one or two or [fewer]' persons out of a hundred people." FAC ¶ 42. These conclusions were false. *Id.* ¶¶ 42-43. Plaintiff's teeth *were not* consistent with the bite mark. *Id.* In particular, Defendant Sperber acknowledged at the time his awareness of the angular distortion in the photograph, yet such awareness did not alter his false conclusion

1    that Plaintiff's teeth were consistent with the purported bitemark. *Id.* ¶ 43.

2    Nevertheless, Defendant Sperber's conclusions "were tendered to the prosecution

3    with the knowledge that they were scientifically baseless and with deliberate

4    indifference to and reckless disregard for Plaintiff's rights and the truth." *Id.*

5    Thereafter,[2] Defendant Sperber testified in Plaintiff's criminal trial, repeating his

6    conclusions to the jury that convicted Plaintiff. *Id.* ¶¶ 42-43, 45.

7        Based on, *inter alia*, the false evidence described above, Plaintiff was

8    arrested, prosecuted, and ultimately convicted, resulting in a sentence of twenty-five

9    years to life. FAC ¶¶ 2-3, 45-46. After over twenty-two years in custody, Plaintiff's

10   conviction was vacated by the California Supreme Court based on Defendant

11   Sperber's false bite mark evidence. *Id.* ¶¶ 4, 13, 42, 50, 52. During the habeas

12   proceedings that led to the reversal of Plaintiff's conviction, Defendant Sperber

13   recanted his prior forensic conclusions and testimony. *Id.* ¶ 43. Although it was a

14   corrected photo that prompted Defendant Sperber's habeas recantation, the falseness

15   of his original forensic analysis and his knowledge of that falseness predated his

16   original trial testimony and subsequent recantation.[3] *Id.*

17       **B.    Current Procedural Posture.**

18       The parties are in the midst of pretrial discovery. Defendant Sperber has

19

20       [2] Although the complaint does not clearly set forth the timeline, the clear and
     reasonable inference from the facts in the complaint is that Defendant Sperber was
21   retained in advance of trial and provided his analysis and conclusions to the
     prosecution in advance of his testimony, which analysis and conclusions were later
22   repeated during his trial testimony. FAC ¶¶ 42-43. To the extent that this is not
     clear, the complaint could be amended to allege it. Weisberg Decl. ¶ 2(a), (c).
23

24       [3] This is a reasonable inference from the allegations in the complaint, which
     state that Defendant Sperber's "false conclusions" were "tendered" to the
25   prosecution "with the knowledge that they were scientifically baseless and with
     deliberate indifference to and reckless disregard for Plaintiff's rights and the truth."
26   FAC ¶ 43. To the extent that this is not clear, the complaint could be amended to
     allege it more clearly. Weisberg Decl. ¶ 2(e).
27

28

1  responded to Plaintiff's initial document request and interrogatories, but those

2  requests did not address Defendant Sperber's employment relationship with the

3  County of San Bernardino, because Plaintiff did not know, at the time, that

4  Defendant Sperber would be contesting that he acted under color of law. Defendant

5  Sperber's deposition has not yet been taken. Now that the under-color-of-law issue

6  has been raised, Plaintiff intends to conduct further written and deposition discovery

7  on the facts relating to his employment relationship with the County and other

8  government agencies.

9  **III.   LEGAL STANDARD**

10     "The principal difference between motions filed pursuant to [Federal Rule of

11  Civil Procedure] 12(b) and Rule 12(c) is the time of filing. Because the motions are

12  functionally identical, the same standard of review applicable to a Rule 12(b)

13  motion applies to its Rule 12(c) analog." *Dworkin v. Hustler Magazine Inc.*, 867

14  F.2d 1188, 1192 (9th Cir. 1989). The Court must "presume all factual allegations of

15  the complaint to be true and draw all reasonable inferences in favor of the non-

16  moving party." *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987)

17  (quoted in *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995). A complaint should not

18  be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of

19  facts in support of his claim which would entitle him to relief." *Gibson v. United*

20  *States*, 781 F.2d 1334, 1337 (9th Cir. 1986) (citation omitted).

21     A complaint need only contain "a short and plain statement of the claim

22  showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). For "notice

23  pleading" under Rule 8(a), the complaint "need not contain detailed factual

24  allegations" as long as it "give[s] the defendant fair notice of what the . . . claim is

25  and the grounds upon which it rests." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521

26  F.3d 1097, 1102 (9th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

27  555 (2007)). In the event that a motion to dismiss or motion for judgment on the

28  pleadings is granted, leave to amend should be freely given. *Polich v. Burlington N.,*

1  *Inc.*, 942 F.2d 1457, 1472 (9th Cir. 1991) ("Dismissal without leave to amend is

2  improper unless it is clear that the complaint could not be saved by any

3  amendment.")

4  **IV.  ARGUMENT**

5      **A.  Defendant Sperber's Reliance on Facts Not Alleged in the**

6          **Complaint and Unfavorable Inferences Cannot Result in Dismissal**

7          **at the Motion for Judgment on Pleadings Stage.**

8      As set forth above, it is well established that, in ruling on a motion for

9  judgment on the pleadings, all allegations in the complaint must be accepted as true

10  and all reasonable inferences from those allegations must be drawn in favor of the

11  non-moving party. To the extent that evidence beyond the pleadings is introduced,

12  the motion is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

13  In such circumstances, "[a]ll parties must be given a reasonable opportunity to

14  present all the material that is pertinent to the motion." *Id.*; *see also* Fed. R. Civ. P.

15  56(d) (court may allow non-movant to take discovery if facts relevant to a motion

16  for summary judgment are unavailable). Facts stated in motions for summary

17  judgment must be supported by evidence. Fed. R. Civ. P. 56(c).

18      Here, Defendant Sperber's motion states, and relies on, various facts that

19  either contradict allegations in the complaint or have no citation to supporting

20  evidence. Defendant presents these facts in the introduction and argument portions

21  of his brief without citation. Notably, they are not included in the "Factual

22  Allegations" section of the brief. Mot. at 2:3-23.

23      Defendant's unsupported facts include the following:

24      (1) Defendant Sperber's "only involvement in the underlying criminal case

25  was testifying as an expert witness in response to Richards' own dental expert at

26  Richards' fourth trial." Mot. at 1:7-8 (no citation); *see also* Mot. at 7:6-8 ("[T]he

27  First Amended Complaint does not allege that Dr. Sperber violated Richards's rights

28  by any pre-testimonial activity . . . . Dr. Sperber was retained for Richards's fourth

1  trial."); Mot. at 5:21-23 ("Dr. Sperber . . . was retained as an outside expert to rebut

2  the testimony of Richards' expert dentist."). According to the complaint, Defendant

3  Sperber was retained to provide "forensic examination, analysis, *and* testimony,"

4  not just testimony. FAC ¶ 10 (emphasis added). The complaint does not mention

5  any other dental experts, and if necessary, Plaintiff could amend the complaint to

6  state that Defendant Sperber did not testify as a rebuttal expert. Weisberg Decl.

7  ¶ 2(d). The complaint does not allege when Defendant Sperber was retained or any

8  reasons behind it other than to examine purported a purported bitemark. All of these

9  matters are subject to ongoing discovery. Weisberg Decl. ¶ 3.

10     (2) "There are no allegations that Dr. Sperber was involved in the criminal

11  investigation of the case." Mot. at 1:8-10 (no citation). The complaint alleges that

12  Defendant Sperber conducted forensic examination and analysis of evidence, in this

13  case purported bitemark evidence, in addition to and necessarily prior to testifying.

14  FAC ¶¶ 10, 42-43.

15     (3) "There is also no dispute that the underlying criminal court certified Dr.

16  Sperber as an expert witness and that he was subject to cross-examination." Mot.

17  1:10-11 (no citation). The complaint does not state that Dr. Sperber was certified as

18  an expert or that he was cross-examined. Thus, there is no basis on the pleadings to

19  state that this is undisputed.

20     (4) "Plaintiff sues Dr. Sperber simply because he gave an opinion *during*

21  *Richards's fourth trial . . .*" Mot. at 1:11-13 (no citation) (emphasis added). As made

22  clear *supra* and *infra*, Plaintiff's allegations against Defendant Sperber are based on

23  his forensic examination and analysis that predated his testimony and resulted in the

24  provision of false information (that Plaintiff's distinctive teeth were "consistent"

25  with a bite mark on Mrs. Richards) to the prosecution. The false information was

26  later presented to the jury along with other false evidence, resulting in Plaintiff's

27  conviction.

28     (5) Defendant Sperber was "unable to give the same opinion" during the

habeas proceedings. Mot. at 1:16-18 (no citation). Defendant Sperber "recanted" his previous testimony. "Contrary to his trial testimony, [Defendant Sperber] testified that Plaintiff's teeth *were not consistent* with the lesion and that Plaintiff was essentially '*ruled out*.'" FAC ¶ 43 (emphasis added). In other words, Defendant Sperber did not simply withdraw his original opinion, he affirmatively gave the opposite opinion.

(6) "There are no allegations that Dr. Sperber was an employee of the County of San Bernardino. . . . Dr. Sperber was retained by the District Attorney's office." Mot. at 4:18-19 (citing FAC ¶ 10). The complaint alleges that Defendant Sperber was retained by the County of San Bernardino and that his conduct was "within the course and scope of his agency and employment relationship" with the County. The complaint does not reference the District Attorney's office. FAC ¶¶ 8, 10.

(6) "Dr. Sperber's testimony at the fourth trial came well after the investigation and Plaintiff's arrest, and he was offered in rebuttal to the criminal defense dental expert. There are no allegations that Dr. Sperber prepared a report with any falsified information . . . . Rather he is being sued because Richards alleges that Dr. Sperber provided testimony . . . ." Mot. at 7:27-8:5 (no citation). As set forth above, the complaint does not allege when Defendant Sperber was retained or why, matters subject to ongoing discovery. Weisberg Decl. ¶ 3. The complaint does allege that Defendant Sperber's false evidence was "tendered" to the prosecution, impliedly in advance of his trial testimony. FAC ¶ 43. And, to the extent that Plaintiff failed to allege that Defendant Sperber's false evidence was tendered in the form of a report (and such allegation is necessary), Plaintiff stands ready to amend the complaint to include that allegation. Weisberg Decl. ¶ 2(c).

(7) Facts stated in Defendant's qualified immunity argument:

"Dr. Sperber never affirmatively stated that the bite mark belonged to Richards but instead said it was consistent with his teeth. Further, according to Plaintiff's allegations, Dr. Sperber acknowledged during his original trial testimony that it appeared that the photograph

that he was examining had some distortion. Richards' criminal defense attorney had every opportunity to challenge Dr. Sperber's qualifications and the basis for his opinions. Dr. Sperber was subject to voir dire and cross-examination, and he testified in rebuttal to the defense dental expert.

Mot. at 10:12-19 (no citation). As set forth above, the complaint does not mention any other dental experts or describe the extent to which Plaintiff's criminal defense attorney had an opportunity to voir dire or cross-examine Defendant Sperber. To the extent that Defendant suggests that Defendant Sperber's forensic analysis was not false because Defendant Sperber never "stated that the bitemark belonged to" Plaintiff, such a suggestion runs counter to the allegations in the complaint. Defendant Sperber stated that the bitemark was consistent with Plaintiff's teeth when, in reality, the bitemark (if it was a bitemark at all) was *inconsistent* with Plaintiff's teeth; Defendant Sperber's forensic analysis was false. FAC ¶¶ 42-43.

(8) Facts stated in Defendant's qualified immunity argument:

"Richards' claims against Dr. Sperber appear to stem out of the fact that when Dr. Sperber was shown digitally enhanced photos at the habeas proceedings, which changed the angle slightly, he testified that he could no longer be certain the marks were consistent with Plaintiff's teeth. A new opinion, based on looking at a new and different version of a photograph, is not evidence that Dr. Sperber falsified evidence— especially given the context that his testimony at the underlying criminal trial is covered by testimonial immunity. Even if Dr. Sperber was originally mistaken based on the photograph he was initially shown and in hindsight regretted giving certain testimony after seeing a different version . . . ."

Mot. at 10:21-11:1 (no citation). Again, as stated above, the complaint alleges that during the habeas proceedings, Defendant Sperber did not merely state that he could "no longer be certain" of his original forensic analysis; he "recanted" his testimony and stated the opposite conclusion. FAC ¶¶ 42-43. Further, Defendants cannot rely on the inference that Defendant Sperber's original forensic analysis was "mistaken[ly]" false or that he simply changed his opinion based on better

9

technology. First, these facts do not undermine the falseness of the evidence, they only challenge Defendant Sperber's mental state. In that regard, the complaint alleges, based in part on Defendant Sperber's contemporary acknowledgement that the photo was distorted, that he submitted his forensic analysis to the prosecution "with the knowledge that [it] was scientifically baseless and with deliberate indifference to and reckless disregard for Plaintiff's rights and the truth." *Id.* ¶ 43. To the extent that Plaintiff must allege additional facts supporting Defendant Sperber's deliberate indifference, Plaintiff stands ready to amend the complaint to include such allegations. Weisberg Decl. ¶ 2(e). However, such matters are subject to ongoing discovery and not susceptible to resolution at the pleadings stage.

All of these unsupported and contradicted facts, clearly essential to Defendants' legal arguments, cannot be credited. *Cf. Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1301 & n.2 (9th Cir. 1992) (At this stage, the district court must "view[] the facts as presented in the pleadings in the light most favorable to the plaintiffs, accepting as true all the allegations in their complaint and *treating as false those allegations in the answer that contradict the plaintiffs' allegations*." (emphasis added)). Accordingly, the motion should be denied for this reason alone.

## B.  Defendant Sperber Acted Under Color of Law, as Alleged in the Complaint, and Defendant Has Cited No Law to the Contrary.

Defendant argues, in essence, that because Dr. Sperber was a hired gun, and not a regular employee, he was not acting "under color of law" for purposes of 42 U.S.C. § 1983. Mot. at 3:20-6:14. However, Defendant cites no cases that support this theory. Instead, Defendant relies on general caselaw and the assertion that "[g]enerally, private parties are not acting under color of state law." Mot. at 3:26-4:22. The cases cited by Defendant for this principle do not support his argument. In *Price v. State of Hawaii*, 939 F.2d 702, 707 (9th Cir. 1991), the allegations in the complaint did not "contain[] a whisper of a suggestion that [private landowner defendants] have acted with the State in any sense whatever." In *Simmons v.*

*Sacramento Cty. Superior Court*, 318 F.3d 1156, 1159 (9th Cir. 2003), the plaintiff sued a series of defendants in relation to the entry of a default judgment against him in a personal injury tort case because he was unavailable for trial due to incarceration. The court held that the civil defense attorney for the tort case, a private attorney who had no alleged involvement in the plaintiff's criminal prosecution, was not acting under color of law. Such cases are completely inapplicable here.

"Anyone whose conduct is 'fairly attributable to the state' can be sued as a state actor under § 1983." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (private attorney retained by city to conduct internal affairs investigation). Courts use a two part test to determine whether a defendant's actions are attributable to the State:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Price*, 939 F.2d at 708 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). The determination of whether an allegedly private party is acting under color of law is a "necessarily fact-bound inquiry" that generally is not suitable for determination at the pleadings stage. *Lugar*, 457 U.S. at 939; *Price*, 939 F.2d at 708.

Here, Plaintiff has alleged that Defendant Sperber was retained by the County of San Bernardino to conduct forensic examination and analysis of evidence from a murder investigation, and that his actions were "within the course and scope of his agency and employment relationship with the County." FAC ¶ 10. Given this allegation, it is difficult to imagine that Defendant Sperber was not "a person for whom the State [wa]s responsible" and whose conduct was not "chargeable to the State." *Lugar*, 457 U.S. at 937. Indeed, in *Filarsky*, the Supreme Court observed that

"[t]he government's need to attract talented individuals is not limited to full-time public employees. Indeed, it is often when there is a particular need for specialized knowledge or expertise that the government must look outside its permanent work force to secure the services of private individuals." *Filarsky*, 566 U.S. at 390 (2012). No case cited by Defendants suggests that the expert and specialized services of such private individuals, performed at the behest of and on behalf of the state, would not be considered state action.

Numerous cases involve forensic examiners and experts who are not permanently employed by the investigating and prosecuting agencies, but who are nevertheless deemed to be acting under color of law, either implicitly[4] or explicitly. *See, e.g.*, *Brewer v. Hayne*, 860 F.3d 819, 821 (5th Cir. 2017) (privately employed "retained government experts" were acting under color of law; "We are persuaded that Defendants, as consulting forensic experts, were engaged in the criminal investigative functions of the state."); *Moldowan v. City of Warren*, 578 F.3d 351, 372 (6th Cir. 2009) (Defendant dentist "a forensic odontologist and consultant for" the county, "represented the State of Michigan in the underlying criminal proceedings against plaintiff"); *Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 798 (N.D. Ill. 2013) (rejecting retained experts' conclusory assertion that they were not acting under color of law; "A private defendant acts 'under color of' state law for purposes of Section 1983 when it is 'a willful participant in joint action with the State or its agents.' That description fits [plaintiff]'s allegation that the Dentist Defendants 'became involved in the prosecution when they were hired by the

---

[4] Because the qualified immunity defense belongs to government officials, private persons acting under color of state law cannot necessarily claim its protections. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012) Thus, to the extent that any case reaches the question of whether a retained expert, doctor, or attorney is entitled to assert a qualified immunity defense, the case has necessarily determined that the person was acting under color of law.

1   prosecution to compare an alleged bite mark on [the victim] with the [plaintiff's]

2   teeth.'" (citation omitted)). Other cases involve analogous circumstances of retained

3   doctors and/or lawyers. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377, 383 (2012)

4   (considering whether private attorney retained by city to conduct internal affairs

5   investigation and deemed to be state actor could assert qualified immunity defense);

6   *Gonzalez v. Spencer*, 336 F.3d 832, 834 (9th Cir. 2003), *abrogated on other grounds*

7   *by Filarsky v. Delia*, 566 U.S. 377 (2012) (private outside counsel retained by the

8   county to defend Los Angeles County and county employees was "act[ing] under

9   color of state law"); *Rodriques v. Furtado*, 950 F.2d 805, 814 (1st Cir. 1991)

10  (private doctor who conducted vaginal search pursuant to warrant acted under color

11  of law; "The scope and motivation for the search were established solely by the

12  state's investigatory goals.")

13          Plaintiff cited several other cases during the meet and confer process, which

14  Defendant has sought to distinguish. Mot. at 4:23-6:14. Yet, the fact remains that

15  Defendant cited no contrary cases in his motion and no examples of a court ruling

16  that a retained prosecution expert was not acting under color of law for purposes of

17  42 U.S.C. § 1983. Indeed, such a holding would discourage counties or states from

18  employing any forensic examiners of any kind, as such investigative functions could

19  then be outsourced, reducing the prospect of liability for constitutional violations

20  such as the ones alleged in this case. It is difficult to fathom how an individual's

21  conduct is not "fairly attributable to the state" (*Filarsky*) when that individual would

22  not have been engaged in the conduct had he not been hired by the state to review

23  documents and render opinions, interacted with state officials, prepared a pre-

24  testimony analysis and report for the state, ultimately testified on behalf of the state

25  and was compensated for all of this by the state—all "reasonable inferences" to be

26  drawn Plaintiff's in favor from the complaint's allegations. *Usher*, 828 F.2d at 561.

27

28

**C.  Defendant Sperber Is Not Entitled to Absolute Testimonial Immunity for his Pretrial Fabrication of Forensic Evidence.**

"Witnesses, including police officers, are absolutely immune from liability for testimony at trial[.]" *Lisker v. City of Los Angeles*, 780 F.3d 1237, 1241 (9th Cir. 2015). The immunity is designed to ensure that witnesses are able to testify candidly without fear of civil liability. *Id.* at 1242-43. The immunity "extends to conspiracies to testify falsely." *Id.*; *Rehberg v. Paulk*, 566 U.S. 356, 360, 370 (2012) (same; acknowledging that law enforcement affidavits are not shielded by absolute immunity); *Paine v. City of Lompoc*, 265 F.3d 975, 982 (9th Cir. 2001) (same; denying immunity for pretrial evidence tampering and manipulation); *Franklin v. Terr*, 201 F.3d 1098, 1102 (9th Cir. 2000) (same; no allegations beyond conspiracy to testify falsely). This is "for practical reasons, as a plaintiff could otherwise easily undermine the interest in witness candor by challenging the conspiracy rather than the testimony itself." *Lisker*, 780 F.3d at 1242-43.

In this case, Defendant Sperber is not being sued for perjury or conspiracy to commit perjury; he is being sued for his non-testimonial fabrication of forensic evidence, *i.e.*, his analysis and conclusion that Plaintiff's distinctive dentition was consistent with a lesion on Mrs. Richards, which was tendered to the prosecution prior to and independent of his trial testimony. "When defendants have 'dual roles as witness and fabricator,' extending [absolute immunity] protection from the testimony to the fabricated evidence 'would transform the immunity from a shield to ensure' candor into 'a sword allowing them to trample the statutory and constitutional rights of others.'" *Lisker*, 780 F.3d at 1243 (citation omitted); *Paine*, 265 F.3d at 983 ("Allowing witnesses to [] launder their non-testimonial activities through their testimony would transform the immunity from" a shield to a sword.). In other words, even though witnesses "are absolutely immune from liability for their alleged perjury and for any alleged conspiracy to commit perjury, they '[o]bviously' enjoy no immunity for 'non-testimonial acts such as fabricating

1   evidence.'" *Paine*, 265 F.3d at 981 (quoting *Cunningham v. Gates*, 229 F.3d 1271,

2   1291 (9th Cir. 2000)).

3          Defendant argues that Defendant Sperber's non-testimonial analysis and

4   conclusions are "inextricably tied" to his eventual testimony (Mot. at 6:20-23), but it

5   is the settled law of this circuit that false information and evidence developed

6   pretrial and submitted to the prosecution do not fall within the ambit of testimonial

7   immunity. *Lisker*, 780 F.3d at 1243 (police reports "memorializ[ing] the substance

8   of eventual testimony" not immunized); *Paine*, 265 F.3d at 981 (The "immunity

9   does not shield non-testimonial conduct."); *see also Gregory v. City of Louisville*,

10  444 F.3d 725, 741 (6th Cir. 2006) ("The creation of the notes was a pretrial,

11  nontestimonial act which does not merit absolute immunity" regardless of whether

12  the notes were the same as subsequent testimony); *Keko v. Hingle*, 318 F.3d 639,

13  644 (5th Cir. 2003) ("if, as alleged, Dr. West used shoddy and unscientific research

14  techniques that resulted in a report critical to a baseless murder prosecution of

15  [plaintiff], there is no obvious reason why Dr. West should enjoy immunity greater

16  than that of other investigators" simply because he provided expert trial testimony

17  for the prosecution). Indeed, none of the cases cited by Defendant extend testimonial

18  immunity beyond conspiracies to commit perjury. All of the cases cited by

19  Defendant either involved immunized in-court testimony (*Briscoe*), involved

20  immunized conspiracies to testify falsely without other nontestimonial conduct

21  (*Rehberg*, *Franklin*, *Cunningham*) or denied immunity to pretrial falsification of

22  evidence (*Paine*, *Lisker*, *Keko*, *Gregory*). Mot. at 6:17-8:12 (citing cases). Three of

23  these cases involved the denial of testimonial immunity to false reports (*Lisker*, 780

24  F.3d at 1241-43), false forensic reports (*Keko*, 318 F.3d at 642-44; *Gregory*, 444

25  F.3d at 740-41), and false notes (*Gregory*, 444 F.3d at 741-42), all of which

26  contained the information that was later repeated in immunized testimony.

27  Defendant has not cited a single case where non-testimonial fabrication of evidence

28  was immunized simply because the evidence was ultimately repeated in trial

1   testimony or intended for that purpose.

2   Specifically, in both *Keko* and *Gregory*, the courts denied testimonial

3   immunity to the work of forensic experts in examining evidence and submitting

4   conclusions to the prosecution. *Keko*, 318 F.3d at 642-44 (denying testimonial

5   immunity to bitemark expert for "pre-testimonial activities in examining Mrs.

6   Keno's body, obtaining and examining Keko's dental impressions and writing a

7   report"); *Gregory*, 444 F.3d at 740-41 (denying testimonial immunity for "pre-trial

8   preparatory activities by experts"; "This Court sees no reason to treat the intentional

9   fabrication of a forensic report differently from the intentional fabrication of a police

10  officer or prosecutor."). The same result was reached in a third case involving an

11  expert forensic odontolgist retained by the prosecution to give bitemark testimony.

12  *Moldowan v. City of Warren*, 578 F.3d 351, 398 n.21 (6th Cir. 2009) ("Contrary to

13  Dr. Warnick's suggestion, the fact that he subsequently testified as to these issues

14  [his forensic analysis and conclusions] does not insulate him from liability." (citing

15  *Gregory*, 444 F.3d at 738-39)). The exact same conduct is the basis for the

16  allegations against Defendant Sperber in this case, and it is not shielded by

17  testimonial immunity.

18  Defendant's various efforts to distinguish this precedent are unavailing.

19  Defendant argues that he was not "part of the investigation team" (Mot. at 7:13-14,

20  7:25-27), that his expert examination was performed after the investigation and

21  arrest in this case (Mot. at 7:14-15, 7:27-28), and that his false conclusions were

22  subject to voir dire and cross examination (Mot. at 8:6-7).[5] None of these facts, even

23  if true, are relevant to the question of whether non-testimonial conduct is shielded

24  by absolute immunity. In *Keko* and *Moldowan*, the experts were outside consultants

25

26

27  [5] As stated *supra* at Section IV(A), none of these facts are alleged in the complaint
    and cannot be the basis for granting judgment on the pleadings.

28

16

1 | and not part of the "investigative team," and the courts nevertheless rejected their
2 | bid for testimonial immunity. *Keko*, 318 F.3d at 642-44; *Moldowan*, 578 F.3d at
3 | 365, 398 n.21. Similarly, *Gregory* specifically states that "[e]xpert forensic
4 | examiners act in an investigatory fashion when they interpret and document physical
5 | evidence." *Gregory*, 444 F.3d at 740.  The *Gregory* court also explicitly rejected the
6 | forensic expert's argument that testimonial immunity applies "to actions by expert
7 | witnesses who become involved in a case after probable cause is established"
8 | because they "did not create probable cause for Plaintiff's arrest." *Id.* And, whenever
9 | testimonial immunity is claimed, the defendant testified in court and was therefore
10 | subject to cross-examination and, if an expert, voir dire. Such an opportunity does
11 | not convert pretrial falsification of evidence into immunized conduct.

12 |     Finally, Defendant argues that "[t]here are no allegations that Dr. Sperber
13 | prepared a report with any falsified information." Mot. at 8:1-2. Although the
14 | complaint does not use the word "report," the allegations in the complaint, construed
15 | in Plaintiff's favor, challenge Defendant Sperber's examination, analysis, and
16 | falsification of evidence that were tendered to the prosecution prior to his testimony,
17 | and those allegations give rise to the reasonable inference that the false evidence
18 | was memorialized in an expert report. FAC ¶¶ 42-43. To the extent that the
19 | allegations do not support that inference, Plaintiff is prepared to amend the
20 | complaint to include such an allegation. Weisberg Decl. ¶ 2(c).

21 |     In sum, Defendant has cited no case which supports the proposition that an
22 | expert's examination, analysis, and false conclusions, submitted to the prosecution
23 | prior to testifying, are shielded from liability by testimonial immunity, and all of the
24 | cases cited by Defendant that address the issue reached the opposite conclusion.

25 | **D.    On the Facts Alleged in the Complaint, Defendant Sperber Is Not**
26 | **Entitled to Qualified Immunity.**

27 |     Defendant's entire qualified immunity argument relies on disputed facts, not
28 | included in any pleading or supported by any evidence and taken in the light most

1  favorable to Defendant. Mot. at 10:3-11:6. *See supra* at pp. 8-9. Those facts take

2  issue with whether or not Defendant Sperber fabricated forensic bitemark evidence

3  (as alleged in the complaint) or merely made a mistake and changed his opinion

4  (unsupported facts stated in Defendant's motion).

5       For purposes of qualified immunity at the pleading stage, the question is:

6  "whether, assuming the facts as asserted by [plaintiff], the 'legal norms allegedly

7  violated by the defendant were clearly established at the time of the challenged

8  action.'" *Moldowan v. City of Warren*, 578 F.3d 351, 397 (6th Cir. 2009) (quoting

9  *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985)); *Mendiondo*, 521 F.3d at 1104

10 ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a

11 cognizable legal theory or sufficient facts to support a cognizable legal theory.").

12 Here, the complaint clearly alleges violations of well-established legal norms.

13      Once again, Defendant cites no cases that address the particular factual

14 circumstances of this case, *i.e.*, whether it was clearly established that a forensic

15 expert who fabricates evidence violates a criminal defendant's due process rights.

16 Although Defendant quotes the rule that clearly established law must not be defined

17 at "a high level of generality" (Mot. at 9:20-10:2), he does not define a more

18 specific level of conduct than whether "an expert giving an opinion or conducting an

19 examination in order to render an opinion can be held liable for constitutional

20 violations." Mot. at 10:7-9.

21      Contrary to Defendant's assertion in the motion, this question has been

22 answered. *Brewer v. Hayne*, 860 F.3d 819, 824 (5th Cir. 2017) ("We have

23 previously held that 'deliberate or knowing creation of misleading and scientifically

24 inaccurate [evidence] amounts to a violation of a defendant's due process rights,'

25 and that reasonable officers know of this right." (citation omitted); clearly

26 established by at least 1992); *Moldowan v. City of Warren*, 578 F.3d 351, 397 (6th

27 Cir. 2009) (denying qualified immunity to bitemark expert; "[A] forensic expert

28 defendant " 'cannot seriously contend that a reasonable [investigator] would not

know that [fabrication of forensic evidence is] inappropriate and performed in violation of an individual's constitutional . . . rights.'" (citation omitted); clearly established by at least 1990); *see also Brown v. Miller*, 519 F.3d 231, 237 (5th Cir. 2008) ("A false or scientifically inaccurate report is equivalent to any other false evidence created by investigators, such as a false police report; as we have stated, there is no reason a government scientific expert 'should enjoy immunity greater than that of other investigators.'"; "We therefore hold that the deliberate or knowing creation of a misleading and scientifically inaccurate serology report amounts to a violation of a defendant's due process rights, and that a reasonable laboratory technician in 1984 would have understood that those actions violated those rights."); *Limone v. Condon*, 372 F.3d 39, 44-45 (1st Cir. 2004) ("[I]f any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit. Actions taken in contravention of this prohibition necessarily violate due process."; clearly established since at least 1945).

As the Third Circuit has observed: "To the best of our knowledge, every court of appeals that has considered the question of whether a state actor has violated the defendant's right to due process of law by fabricating evidence to charge or convict the defendant has answered the question in the affirmative. . . . A different view is not just unsupported; it is untenable. . . . Analogous precedent should have informed appellees or any reasonable state actor that, by fabricating evidence for use in a criminal prosecution, a state actor would violate a defendant's constitutional rights." *Halsey v. Pfeiffer*, 750 F.3d 273, 292, 295-96 (3d Cir. 2014) (citing *Whitlock v. Brueggemann,* 682 F.3d 567, 585 (7th Cir.2012) (collecting court of appeals cases)).

The Ninth Circuit has repeatedly recognized the "virtually self-evident" proposition that "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th

1    Cir. 2001); *see also Arden v. Kastell*, 553 F. App'x 697, 698 (9th Cir. 2014) (false

2    police reports); *Gantt v. City of Los Angeles*, 717 F.3d 702, 707 (9th Cir. 2013)

3    (abusive and coercive investigative techniques yielding false information);

4    *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101 (9th Cir. 2010)

5    (falsification of reports containing witness statements); *Galbraith v. Cty. of Santa*

6    *Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002) (falsification of autopsy report); *Lacy v.*

7    *Cty. of Maricopa*, 631 F. Supp. 2d 1197, 1206 (D. Ariz. 2008) (falsification of

8    autopsy report). The Ninth Circuit has been equally clear that the proper mental state

9    for such violations is "deliberate indifference to or reckless disregard for an

10    accused's rights or for the truth." *Tennison v. City & Cty. of San Francisco*, 570 F.3d

11    1078, 1089 (9th Cir. 2009) (setting forth mental state for due process claims); *Gantt*,

12    717 F.3d at 707-08 (applying *Tennison* standard to fabrication of evidence claims);

13    *Galbraith*, 307 F.3d at 1126 ("[A] coroner's reckless or intentional falsification of an

14    autopsy report that plays a material role in the false arrest and prosecution of an

15    individual can support a claim under 42 U.S.C. § 1983"). As is clear from the cases

16    cited throughout this Memorandum, no distinction is made between false police

17    officer statements and false forensic statements—false statements made knowingly

18    or recklessly before trial, even when repeated in testimony, are actionable under

19    clearly established law, as confirmed by most if not all circuits.

20         What remains of Defendant's qualified immunity argument is the factual

21    contention that he did not fabricate evidence or did not do so intentionally. Such

22    factual contentions, which run counter to the allegations in the complaint, must be

23    rejected for purposes of the instant motion. *See Hoeft v. Tucson Unified Sch. Dist.*,

24    967 F.2d 1298, 1301 & n.2 (9th Cir. 1992) (court must accept non-moving

25    plaintiffs' allegations as true and reject defendants' allegations as false).

26    **V.   CONCLUSION**

27         For all of the foregoing reasons, Plaintiff respectfully request that the Court

28    deny Defendant Sperber's motion for judgment on the pleadings.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KAYE, McLANE, BEDNARSKI & LITT, LLP

DATED: July 27, 2018        By:   */ s / Caitlin S. Weisberg*
                                  CAITLIN S. WEISBERG
                                  Attorneys for Plaintiff