**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:**  **ED CV 17-00497-SJO (SPx)**       **DATE:** **October 16, 2018**

**TITLE:**   **William J. Richards v. County of San Bernardino et al.**

========================================================================

**PRESENT:  THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                              Not Present
Courtroom Clerk                            Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF(S):**     **COUNSEL PRESENT FOR DEFENDANT(S):**

Not Present                                     Not Present

========================================================================

**PROCEEDINGS (in chambers): ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** [Docket No. 57]

This matter is before the Court on Defendants Dr. Norman Sperber ("Sperber"), Tom Bradford ("Bradford"), and John Navarro's ("Navarro") (collectively, "Defendants") Motion to Dismiss Plaintiff's Second Amended Complaint  ("Motion"), filed September 13, 2018.  Plaintiff William J. Richards ("Plaintiff") opposed the Motion ("Opposition") on September 26, 2018.  Defendants replied ("Reply") on October 1, 2018.  The Court found this matter suitable for disposition without oral argument and vacated the hearing set for October 15, 2018.  *See* Fed. R. Civ. P. 78(b).  For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** the Motion.

I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed a complaint ("Complaint") on March 16, 2017, alleging that the County of San Bernardino and its law enforcement officers, prosecutors, investigators, and experts violated his constitutional rights by fabricating evidence against him to convict him for the 1993 murder of his wife, Pamela Richards ("Mrs. Richards").  (*See generally*, Compl., ECF No. 1.)  Plaintiff filed his First Amended Complaint ("FAC") on July 10, 2017.  (*See generally* FAC, ECF No. 15.)  Defendant Sperber filed a Motion for Judgement on the Pleadings ("Motion on Pleadings") on July 13, 2017, which this Court granted ("Order Granting Motion on Pleadings") on the ground that Sperber had absolute immunity from liability.  (*See generally* Mot. on Pleadings, ECF No. 47; Order Granting Mot. on Pleadings, ECF No. 54.)  Plaintiff subsequently filed a second amended complaint ("SAC") on August 24, 2018.  (*See generally* SAC, ECF No. 55.)

The factual allegations relevant to the present Motion are as follows.  On August 10, 1993, Plaintiff returned home from work to discover that his wife had been brutally murdered.  (SAC ¶ 2.) Plaintiff called the police, was immediately treated as a suspect, and was eventually arrested. (SAC ¶¶ 2, 26, 40.)  Plaintiff alleges that throughout the investigation, police officers, detectives, and other experts made false statements and fabricated evidence against Plaintiff.  (SAC ¶¶ 23-38.)  After two hung juries and a mistrial, Plaintiff was convicted and sentenced to twenty-five

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** __ED CV 17-00497-SJO (SPx)__        **DATE:** __October 16, 2018__

years to life in prison. (SAC ¶¶ 50-51.) On May 26, 2016, the California Supreme Court reversed Plaintiff's conviction on the ground that false evidence had been presented at trial, and Plaintiff was released from custody on June 21, 2016, after spending twenty-two years in prison. (SAC ¶¶ 57-58, 64.)

Plaintiff generally alleges that "[e]ach of the Defendants caused and is responsible for the unlawful conduct and resulting injury" that he suffered. According to Plaintiff, Defendants, among other things, "personally participating in the conduct, or acting jointly and in concert with others who did so by authorizing, acquiescing in, or failing to take action to prevent the unlawful conduct by intervention, or promulgating policies and procedures or practices pursuant to which the unlawful conduct occurred." (SAC ¶ 13.)

Plaintiff specifically alleges that Sperber, a forensic odontologist, presented false evidence at Plaintiff's final criminal trial. (SAC ¶¶ 42, 45.) The County of San Bernardino retained Sperber in advance of Plaintiff's final trial to conduct a forensic examination and analysis of a lesion on Mrs. Richards' body. (SAC ¶ 42.) Plaintiff alleges that Sperber worked with other defendants in an investigatory capacity in conducting his forensic examination and analysis, and prepared a written report stating his conclusions that the lesion was a human bite mark that match Plaintiff's dentition. (SAC ¶¶ 43-45.) Plaintiff alleges that Sperber submitted his forensic report to the prosecution knowing that his conclusions were false and scientifically baseless. (SAC ¶ 47.) According to Plaintiff, Sperber knew that the photograph of the lesion on which he relied was distorted and thus made any match between Plaintiff's teeth and the lesion meaningless. (SAC ¶ 47.)

Plaintiff also alleges that Bradford, Navarro, and San Bernardino Sheriff's Department Detective Norman Parent investigated the murder of Mrs. Richards as a team. (SAC ¶ 26.) Navarro was present at the autopsy of Mrs. Richards, and conducted a timed drive between Plaintiff's workplace and home to determine whether Plaintiff had sufficient time to murder Mrs. Richards. (SAC ¶¶ 35, 23.)

Plaintiff alleges that Defendants "decided to defer any investigation or crime scene processing until daylight, thus failing to collect exculpatory evidence; failed to secure the crime scene, allowing dogs to disturb the evidence; failed to investigate aspects of the crime scene and several types of evidence; and destroyed the crime scene by removing all items from the property." (SAC ¶¶ 30-33, 41.)

II.    DISCUSSION

Defendants move to dismiss Plaintiff's SAC against Sperber on three grounds: (1) Sperber has absolutely immune from liability based on testimonial privilege; (2) Sperber is entitled to qualified immunity; and (3) Plaintiff fails to make factual allegations necessary to state a claim against Sperber. (Mot. at 1-2; ECF No. 57.) Defendants move to dismiss Plaintiff's SAC against Bradford

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** ED CV 17-00497-SJO (SPx)     **DATE:** October 16, 2018

and Navarro for Plaintiff's purported failure to make factual allegations necessary to state a claim. (Mot. at 2.)

    A.    <u>Witness Immunity</u>

Defendants move to dismiss Plaintiff's SAC against Sperber on the ground that he is immune from liability for his expert witness testimony at Plaintiff's underlying criminal trial.  (Mot. at 6.)

A witness is absolutely immune from liability for testimony at trial.  *Briscoe v. LaHue*, 460 U.S. 325, 345-46 (1983).  Absolute immunity also extends to preparatory activities "inextricably tied" to testimony, such as "conspiracies to testify falsely."  *Lisker v. City of Los Angeles*, 780 F.3d 1237, 1241 (9th Cir. 2015).  However, this immunity "is not limitless," and a witness is not immune from liability for "non-testimonial" acts such as "tampering with documentary or physical evidence or preventing witnesses from coming forward."  *Lisker*, 780 F.3d at 1242 (citing *Paine v. City of Lompoc*, 265 F.3d 975, 981-82 (9th Cir. 2001)).  In *Lisker*, two detectives created a "Murder Book" containing their "notes, investigative reports, and photographs of the crime scene," which they argued were "inextricably tied" to their testimony because they were not introduced at trial and were intended to memorialize the substance of their testimony.  780 F.3d at 1239, 1242.  The Ninth Circuit rejected this argument and held that the materials had "non-testimonial evidentiary value" apart from influencing trial testimony and were analogous to "documentary and physical evidence—such as falsified videotaped interviews and forensic reports—that fall outside the protection of absolute immunity."  *Id.* at 1242 (citing *Gregory v. Louisville*, 444 F.3d 725, 740-411 (6th Cir. 2006) (denying immunity to expert and police officers on the ground that the expert's forensic report and police officers' investigatory notes were pretrial, non-testimonial acts that "comprise part of the documentary record before the prosecution and defense and affected the course of the criminal proceedings")).

This Court previously granted Sperber's Motion for Judgment on the Pleadings, explaining that "[n]otoriously absent is any allegation that he created any sort of **documentary of physical evidence** that became part of the record before the prosecution and defense, such as a forensic report."  (Order Granting Mot. on Pleadings at 4.)  In the SAC, Plaintiff cures this defect: Plaintiff alleges that Sperber "worked with other SBSD defendants in an investigatory capacity in conducting his forensic examination and analysis," "prepared a written report stating his forensic analysis and conclusions," and "Sperber's false conclusions . . . were tendered to the prosecution." (SAC ¶¶ 43-44, 47.)

Defendants nonetheless argue that the claim must be dismissed because Plaintiff fails to explicitly allege that Sperber's report affected charging decisions, plea bargaining, or cross-examination. (Mot. at 7-8.) Although the Sixth Circuit in *Lisker* has recognized that police investigative materials have independent evidentiary value because they are part of the documentary record and affect criminal proceedings, the Sixth Circuit identified these effects to illustrate the evidentiary value of

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** <u>ED CV 17-00497-SJO (SPx)</u>        **DATE:** <u>October 16, 2018</u>

investigative materials in the record.  *See Gregory*, 444 F.3d at 741.  Moreover, *Lisker* expressly identified forensic reports as evidence that falls outside the protection of absolute immunity.

Thus, Plaintiff need not allege that the forensic report affected charging decisions, plea bargaining, or cross-examination.  His allegations are sufficient because they establish that Sperber created a report that had evidentiary value independent of his testimony, and which was provided to the prosecution. Construing the SAC in the light most favorable to Plaintiff, Sperber is not absolutely immune.

      B.    <u>Qualified Immunity</u>

Defendants also move to dismiss Plaintiff's claims against Sperber on the ground that Sperber is entitled to qualified immunity because he did not violate Richards' constitutional rights, and he would not have been on notice that his conduct was unlawful.  (Mot. at 8.)

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted).  To determine whether qualified immunity applies, a court must determine whether: (1) the facts adduced constitute the violation of a constitutional right; and (2) the constitutional right was clearly established at the time of the alleged violation. *Mitchell v. Washington*, 818 F.3d 436, 443 (9th Cir. 2016) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).  "An official 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his or her] shoes would have understood that he [or she] was violating it.'"  *Hardwick v. County of Orange*, 844 F.3d 1112, 1117 (9th Cir. 2017) (alterations in the original) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 134 S. Ct. 2012, 2023 (2014)).

Accordingly, this Court previously held that "in order for Dr. Sperber's conduct to qualify as an established constitutional violation, he must have recklessly or intentionally falsified the kind of documentary or physical evidence described [by the Plaintiff]." (Order Granting Mot. on Pleadings at 4 (citing *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2006).) In *Galbraith*, the Ninth Circuit held that a coroner's reckless or intentional falsification of an autopsy report that played a material role in the false arrest and prosecution of an individual in the mid-1990s could support a claim under 42 U.S.C. § 1983 and the Fourth Amendment. 307 F.3d at 1126; *see also Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001) ("[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence . . . .").  There, the plaintiff pled that the coroner recklessly disregarded the truth by asserting in his autopsy report that the plaintiff's wife was strangled to death, ignored evidence of

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority  _____
Send      _____
Enter     _____
Closed    _____
JS-5/JS-6  _____
Scan Only _____

**CASE NO.:**  ED CV 17-00497-SJO (SPx)     **DATE:** October 16, 2018

suicide, did not do the autopsy work he claimed to have done, and deliberately lied in the autopsy report, to investigators, and as a witness at the preliminary hearing. *Id.* at 1121, 1127. These allegations were sufficient to allege a Fourth Amendment violation.

Here, Plaintiff alleges that Sperber knew his forensic report was scientifically baseless and that his conclusions were false and meaningless, and specifically alleges that Sperber "knew from his research, training, and experience that the angular distortion in the photograph of [the lesion] rendered any direct comparison with a mold of Plaintiff's teeth impossible, and made any match . . . meaningless." (SAC ¶ 47.) Plaintiff also alleges that Sperber "thought of himself as the hero who would save the prosecution," his false report was "deliberately intended to mislead the jury and secure a conviction," and that if any of the false evidence presented had been revealed as false, the trial would likely have had another outcome. (SAC ¶¶ 47, 48, 50.) These allegations are less extreme than those presented in *Galbraith*, but when accepted as true, they sufficiently allege that Sperber intentionally or recklessly falsified his report, and thus violated a clearly established constitutional right. Therefore, Sperber is not entitled to qualified immunity.

### C.    Failure to State a Claim Against Sperber

Although Defendants argue that Plaintiff fails to make factual allegations demonstrating that Sperber knew that he was falsifying evidence or that he did so with reckless disregard for Plaintiff's constitutional rights, Mot. at 2, Plaintiff alleges that Sperber was experienced and knew that his forensic report was scientifically baseless. As discussed above, these allegations are sufficient to state a claim at this stage, and Defendant's Motion is **DENIED**.

### D.    Claims Against Bradford and Navarro

Defendants seek to dismiss Plaintiff's claims against Defendants Bradford and Navarro for failure to state a claim under Rule 12(b)(6). (Mot. at 2, 12.) Plaintiff alleges that Bradford and Navarro violated his constitutional rights by conspiring to falsely convict him.

"A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012) (citing *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). An officer's liability under section 1983 is predicated on his "integral participation" in the alleged violation. *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (citing *Chuman v. Wright*, 76 F.3d 292, 294-95 (9th Cir. 1996). "'Integral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation." *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004). However, a defendant cannot be held liable "because of his membership in a group without a showing of individual participation in the unlawful conduct." *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (citing *Chuman*, 76 F.3d

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** ED CV 17-00497-SJO (SPx)      **DATE:** October 16, 2018

at 295).  Police officers can be held liable for failing to intercede when their fellow officers violate constitutional rights only if they had an opportunity to intercede.  *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000).

Plaintiff contends that the SAC pleads the integral participation of Bradford and Navarro in the alleged constitutional violations.  Plaintiff points to the allegation that Bradford and Navarro "investigated the murder as a team" with another detective and argues that they failed to intervene as co-equal participants in the murder investigation and constitutional violations.  (Opp'n at 17-18; SAC ¶ 26.)  While Plaintiff sets forth in the SAC a number of specific factual allegations regarding the processing of the crime scene and actions taken during the investigation, Plaintiff fails to make factual allegations indicating that Bradford or Navarro "integrally participated" in the alleged violations or had an opportunity to intercede when their fellow officers violated Plaintiff's constitutional rights.  (*See generally* SAC.)

Notably, Plaintiff makes no specific allegations concerning Bradford's actions or involvement in the investigation.  (*See generally* SAC.)  Plaintiff alleges that Navarro was present at the autopsy of Mrs. Richards, and that he conducted a timed test drive between the Plaintiff's workplace and home to determine whether Plaintiff could have made it home with time to murder his wife before calling the police.  (Mot. at 12-13; *see generally* SAC.)  While Plaintiff contends that the SAC alleges integral participation by stating that "[e]ach of the Defendants caused and is responsible for the unlawful conduct" by, among other things, "personally participating in the conduct," "acting jointly and in concert with others," and "failing to . . . prevent the unlawful conduct," these allegations are conclusory.  (SAC ¶ 13.)  Even when combined with specific factual allegations regarding the investigation, these allegations do not indicate how Defendants participated in the alleged violations, whether their participation in the alleged violations was integral, or whether they had an opportunity to intercede in the alleged constitutional violations.

///
///
///
///
///
///
///
///
///
///
///
///
///

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:   ED CV 17-00497-SJO (SPx)**        **DATE: October 16, 2018**

Plaintiff has alleged that Bradford and Navarro were part of the team that investigated the murder of Mrs. Richards, and that actions taken by other officers and by the team resulted in the alleged constitutional violation. Plaintiff fails to plead Bradford and Navarro's individual participation in unlawful conduct, and therefore, the Court **GRANTS** Defendant's Motion to Dismiss the claims against Bradford and Navarro.

III.    <u>RULING</u>

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint.  Plaintiff may file an amended complaint within **10** days of the date of this Order.  If Plaintiff files an amended complaint, Defendants must respond within **10** days of the date on which the amended complaint is filed.

IT IS SO ORDERED.